# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DOMONIC RONALDO MALONE, | Case No.: 2:22-cv-01089-APG-DJA |
| Plaintiff | **Order Granting Motion for Summary Judgment** |
| v. | [ECF Nos. 32, 42, 45] |
| JANSSEN BIOTECH, INC. *et al.*, | |
| Defendant | |

Plaintiff Domonic Ronaldo Malone is an inmate in the custody of the Nevada Department of Corrections (NDOC). Malone alleges that he caught COVID-19 while housed at High Desert State Prison (HDSP) and that he now suffers from residual breathing problems, a loss of taste and smell, and an inability to focus. He alleges that two correctional officers entered HDSP while they had COVID-19; inmates received inadequate face masks and no cleaning supplies; ventilation was poor; and infected inmates were housed with uninfected inmates. He also alleges that the COVID-19 vaccine partially paralyzed his right side for ten months. He brings an Eighth Amendment conditions-of-confinement claim against the correctional officers, the HDSP wardens, and the NDOC medical director.

The defendants move for summary judgment, arguing that Malone failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) and that they are entitled to qualified immunity. They also argue that there is no evidence that Malone had COVID-19 or suffered long-term effects. Malone responds that he exhausted all available remedies. He also argues that I should deny summary judgment because he has not been able to access his medical records, and that he should have an opportunity to review them to prove his claims.

I grant summary judgment in favor of the defendants.  Even when I view the evidence in the light most favorable to Malone and take as true his allegations about his health, t he did not exhaust available administrative remedies.  Moreover, Malone has not shown that additional discovery will change the exhaustion analysis.  I need not address qualified immunity because I grant summary judgment based on Malone's failure to exhaust.  There are two other pending motions, which I will address first.

## I.  MOTION TO EXTEND TIME

Malone moved for additional time to respond to the defendants' motion for summary judgment due to a lockdown at HDSP.  ECF No. 42.  However, because Malone already filed multiple documents since then, I deny the motion to extend time as moot.

## II.  MOTION TO STRIKE AND CONSTRUING MALONE'S FILINGS

After Malone responded to the motion for summary judgment and the defendants replied, Malone filed two additional responses. ECF Nos. 43, 47.  These filings supplemented his arguments that he exhausted all available remedies and that he made unrequited requests to see his medical records and attached related evidence.  Malone labeled each of the filings as his "reply in support of motion for summary judgment" and requested that I "grant summary judgment in favor of the plaintiff." ECF Nos. 43 at 1, 5; 47 at 1.  The defendants move to strike ECF No. 43 because I did not grant Malone leave to file it and because the deadline to file dispositive motions passed months ago. ECF No. 45.

"Pro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).  However, I "should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules

strictly." *Soto v. Unknown Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quotation omitted). Malone did not move for leave of court to file the two additional responses as required by Local Rule 7-2(g), but they contained responsive arguments and evidence to the defendants' motion for summary judgment. Therefore, I will construe ECF No. 43 and ECF No. 47 as supplemental responses, and I grant Malone leave to file them.

Defendants argue that construing these filings as Malone's motion for summary judgment is inappropriate because the deadline for dispositive motions passed in September 2023 and Malone has not provided good cause or explained excusable neglect for the delay. I will not construe either filing as a motion for summary judgment because Malone filed them over six months after the deadline for dispositive motions, without requesting additional time to do so before the end of that deadline.[1] Moreover, even if I construed one of these documents as a motion for summary judgment, summary judgment in Malone's favor would not be appropriate because he did not exhaust available administrative remedies.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] Though I previously granted Malone 90 additional days to respond to the defendants' motion for summary judgment, it was not an extension of time to file dispositive motions. ECF No. 39.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.")  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**B. Exhaustion**

The PLRA requires that an inmate exhaust all "administrative remedies as are available" before bringing a claim related to prison conditions. 42 U.S.C. § 1997e(a).  "Exhaustion must be 'proper.'  This means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  Thus, the inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  "The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

NDOC's grievance process is governed by Administrative Regulation (AR) 740. ECF No. 32-14 at 1.  That process has three levels through which the inmate must proceed to exhaust his administrative remedies: an informal grievance, a first-level appeal, and a second-level

appeal. *See id.* at 10-15 (AR 740.08-740.10).  The time limit for NDOC to respond to informal grievances and first-level appeals is 45 days. *Id.* at 12, 14.  After receiving NDOC's response, inmates have five days to appeal to the next grievance level. *Id.* at 12, 14.  However, AR 740.03(8) states that "[a]n overdue grievance response at any level is not an automatic finding for the inmate." *Id.* at 6.  Instead, inmates "may proceed to the next grievance level . . . if a response is overdue," or if NDOC responds late, "[t]he overdue response does not count against the inmate's timeframe for an appeal if he or she waits for the response before initiating the appeal." *Id.*  AR 740 does not provide guidance as to the factual specificity required in a grievance, so an NDOC inmate's grievance is properly specific if it "alerts the prison to the nature of the wrong for which redress is sought," or puts the prison on notice of the "root cause" of a problem. *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (simplified); *McCollum v. Cal. Dep't of Corr. & Rehab.,* 647 F.3d 870, 876-77 (9th Cir. 2011).

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones*, 549 U.S. at 216. Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted).  For example, "a prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).  The defendants bear the "ultimate burden" of proving a failure to exhaust. *Williams*, 775 F.3d at 1191.

### 1.  *Overview of the Parties' Positions*

The defendants argue that Malone failed to exhaust his administrative remedies because Malone filed only one grievance related to COVID-19 (number 2006-31-16057) and he abandoned it.  Malone argues that he exhausted a different grievance (number 2006-31-39554). ECF No. 43 at 2.  He also contends that administrative remedies were unavailable to him because NDOC failed to respond to his grievances within the timeframes required by AR 740 and has a practice of impeding and frustrating the grievance process so that inmates give up on it. *Id.*; ECF No. 40 at 7.

### 2.  *Grievance Number 2006-31-16057*

The defendants argue that grievance 2006-31-16057 was abandoned at the informal level and that it was not properly grieved because it lacked specificity as to what protocols were not followed.  Based on NDOC's electronic records, grievance 2006-31-16057 complains that Malone "became sick during the quarantine because proper protocols were not followed." ECF No. 32-13 at 2, 4.  Malone does not attach the handwritten version of this grievance.

Viewing the evidence in the light most favorable to Malone, no reasonable juror could conclude that grievance 2006-31-16057 was properly exhausted.  Nothing indicates Malone appealed to the second level. *Id.* at 3.  Although the electronic record contains the words "1st LVL," that at most may denote that Malone appealed this grievance to the first level. *Id.* at 3. Moreover, each filing for this grievance was returned to him with additional administrative instructions because Malone did not follow the procedural rules of AR 740. *Id.* at 2-4.  Lastly, based on the evidence provided, no reasonable juror could conclude that this grievance put the prison on notice of the root cause of the issue.  The prison had many COVID-19 related protocols, but the grievance does not specify which protocols were not followed. *See* ECF No.

32-3.  Therefore, the defendants have made an initial showing that Malone failed to exhaust grievance 2006-31-16057.

### 3.   *Grievance Number 2006-31-39554*

Malone responds that he exhausted his remedies because he filed a second level appeal for grievance 2006-31-39554 that NDOC returned unanswered. ECF No. 43 at 2, 11.  Malone filed grievance 2006-31-39554 and the related administrative claim form on April 30, 2022, while housed at Southern Desert Correctional Center (SDCC). ECF No. 3 at 10, 12.  In this grievance, Malone complained that in July 2021, he lost his paid prison industries job because defendant Jonathan Corrujedo retaliated against him and falsely reported him for making a threat. *Id.* at 10-14.  This grievance does not complain about Malone contracting COVID-19 or the related health effects.  Therefore, even if grievance 2006-31-39554 was properly exhausted, it does not exhaust Malone's Eighth Amendment COVID-19 claim.

### 4.   *Delayed Response by NDOC*

Malone also argues that he exhausted an unidentified "informal grievance [that he filed] on or about mid 2020-21 concerning the issue at hand" because NDOC failed to respond to him within 45 days as required by AR 740. ECF No. 40 at 4.  The defendants reply that, if NDOC's response was delayed, Malone could have continued to appeal the grievance either after the 45-day deadline passed or after he received the late response.  I agree.  Based on AR 740.03(8), NDOC's delay in responding to this grievance did not prevent Malone from continuing to appeal, and therefore does not excuse his failure to exhaust any grievance.

### 5.   *NDOC's Practices*

In his supplemental response, Malone argues that NDOC's "normal practices are to impede and frustrate the grievances process so most if not all inmates simply give up." ECF No.

43 at 2.  To support this argument, Malone attaches declarations by him and other inmates at

HDSP.  These inmates declare that they have not observed any inmates at HDSP receive

responses to their grievances or that they have observed HDSP officials rejecting grievances for

"hyper technical" or "fraudulent" reasons inconsistent with AR 740. ECF No. 43 at 12-30.  In

particular, Malone declares that on December 28, 2022, he was told by HDSP wardens that, due

to understaffing, they cannot respond to grievances and that inmates should not file grievances.

*Id.* at 13.

Viewing the evidence in the light most favorable to Malone, a reasonable jury could find

that he has observed and was reliably told that the grievance process was not available at HDSP.

However, by April 30, 2022, and until October 13, 2022, Malone was housed at a different

facility: SDCC. ECF Nos. 3 at 10; 43 at 12.  Malone does not provide any evidence showing that

administrative remedies were unavailable to him at SDCC, as the inmates' observations are only

of practices at HDSP.  Therefore, this argument does not excuse Malone from failing to exhaust

his administrative remedies while he had the opportunity to grieve or appeal his COVID-19

claims while he was housed at SDCC.

### 6.  *Summary*

The defendants have shown that Malone did not properly exhaust grievance 2006-31-

16057.  Malone has not pointed to any other grievance that complained about his contraction of

COVID-19 or related long-term health effects.  Nor has he shown that there is a genuine issue of

material fact that the grievance system was unavailable to him at all times before bringing this

claim.  Therefore, the defendants have met their burden to show that Malone failed to exhaust his

available administrative remedies.

**C. Access to Medical Records and Rule 56(d)**

Malone argues that I should deny summary judgment because he has not been able to access his medical records, and that he should have an opportunity to review them to prove his claims.  Relatedly, Malone contends that the defendants never responded to his discovery requests.  Malone cites *Haines v. Kerner* to support his contention that he should be allowed to offer proof to support his case. 404 U.S. 519 (1972). ECF No. 40 at 7.  The defendants reply that Malone has not provided an affidavit stating his lack of ability to access facts as required by Federal Rule of Civil Procedure 56(d) nor explained what facts he thinks are missing, and that there are no more material facts needed to decide the case. ECF Nos. 41 at 3; 48 at 3.  However, the defendants concede that they did not answer Malone's discovery requests, and therefore are not opposed to reopening discovery. ECF No. 48 at 1, 3.

*Haines* holds that courts should allow pro se inmate claims to advance beyond the motion to dismiss stage even if the complaint is "inartfully pleaded," as long as relief is plausible. 404 U.S. at 520.  However, it does not speak to Malone's request, which is that I deny summary judgment against him based on a lack of access to certain facts during the discovery period.  Rather, the situation here is governed by Rule 56(d), which may allow me to defer or deny a motion for summary judgment and allow more time for discovery when facts are unavailable to the nonmovant.  "A party requesting a continuance pursuant to Rule 56(d) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *SEC v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (simplified).  Moreover, "[t]he facts sought must be 'essential' to the party's opposition to summary judgment, and it must be 'likely' that those facts will be discovered during further discovery." *Id*. (citations omitted).

1        Though Malone did not provide an affidavit or declaration, because he is a pro se inmate

2  I will not apply this part of the rule strictly against him. *See Soto*, 882 F.3d at 872.  Malone has

3  not exhausted his available administrative remedies, so additional discovery would be "essential"

4  to Malone's opposition only if it would uncover evidence from which a reasonable jury could

5  find that Malone did exhaust.  Malone does not argue he needs discovery to identify an

6  exhausted grievance or to prove that remedies were unavailable to him.  He specifies that he

7  wants access to his medical records and the results of his COVID tests, and that he believes those

8  records contain his "medical request forms" as well as information about "lack of medical

9  attention" and "how he contracted [the] virus." ECF Nos. 40 at 2, 7; 43 at 3.  However, Malone

10  does not explain how that information would relate to exhaustion or availability of administrative

11  remedies.[2]  Therefore, re-opening discovery would be futile and denial or deferral of the

12  defendants' motion for summary judgment under Rule 56(d) is not warranted.[3]

13  **III.  CONCLUSION**

14        I THEREFORE ORDER that plaintiff Domonic Ronaldo Malone's motion to extend time

15  **[ECF No. 42] is DENIED as moot.**

16

---

17  [2] Although neither side addressed it in their, Malone alleged in his "addendum" to his complaint
that certain health issues prevented him from exhausting grievances.  Specifically, he alleged that

18  after receiving the COVID-19 vaccine in May 2021, he was partially paralyzed on his right side
for 10 months. ECF No. 3 at 1-2.  He alleged that he "was (and still is) suffering from 'covid

19  fog' (an inability to focus and function at pre-covid levels)." *Id.* at 2.  When coupled together,
these health issues allegedly "incapacitated [him] as far as having the capacity and opportunity to

20  timely file his grievances." *Id.*  Even if I consider this as an argument made by Malone against
summary judgment and take all of these allegations as true, he clearly was physically and

21  mentally capable of filing grievances again by April 2022. *See* ECF Nos. 1-1 (Malone's
complaint, filed in July 2022); 32-12 at 2-5 (grievances Malone filed in and after April 2022).

22  This argument does not change the exhaustion analysis.

23  [3] The defendants' counsel declared that the defendants offered to stipulate to additional
discovery, but Malone declined and stated that he preferred for the court to make a ruling. ECF
No. 48-1 at 3.

I FURTHER ORDER that ECF No. 43 and ECF No. 47 are construed as plaintiff Domonic Ronaldo Malone's supplemental responses to the defendants' motion for summary judgment, and I grant Malone leave to file them.  Accordingly, the defendants' motion to strike **[ECF No. 45] is DENIED.**

I FURTHER ORDER that the defendants' motion for summary judgment **[ECF No. 32] is GRANTED**.  The clerk of court is instructed to enter judgment in favor of the defendants and against plaintiff Domonic Ronaldo Malone, and to close this case.

DATED this 5th day of May, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE